IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RANDY D. KELLEY,                )
                                )
        Plaintiff,               )
                                )
v.                              )       Case No. CIV-14-429-KEW
                                )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social          )
Security Administration,         )
                                )
        Defendant.               )

**OPINION AND ORDER**

Plaintiff Randy D. Kelley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on December 8, 1976 and was 36 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a general laborer, machinist, and pipe layer. Claimant alleges an inability to work beginning January 18, 2011 due to limitations resulting from mental and emotional problems.

**Procedural History**

On January 21, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 5, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") John W. Belcher in Tulsa, Oklahoma. He issued an unfavorable decision on March 21, 2013. The Appeals Council denied review of the ALJ's decision on July 24, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work. He also found Claimant could perform a full range of work at all exertional levels with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find Claimant's impairments met or equaled a listing; (2) failing

4

to provide a proper analysis at steps four and five; (3) failing to properly evaluate the medical and non-medical source evidence; (4) failing to perform a proper credibility determination; and (5) failing to properly develop the record.

## Consideration of a Listing

In his decision, the ALJ found Claimant suffered from the severe impairments of post-traumatic stress disorder ("PTSD"), intermittent explosive disorder, mood disorder, NOS, cognitive disorder, NOS, and paranoid, schizoid and antisocial features. (Tr. 36). The ALJ determined Claimant retained the RFC to perform his past relevant work as a laborer and shop helper. (Tr. 40). The ALJ also found Claimant could perform a full range of work at all exertional levels but with the non-exertional limitations of performing only simple tasks. Claimant could have no more than superficial contact with co-workers and supervisors. He could have no close physical proximity to co-workers. Also, Claimant could have no more than incidental public contact. (Tr. 38).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of mail room clerk, marker, and assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 41). As a result, the ALJ determined Claimant was not under a disability from January 18, 2011 through the date of

5

the decision. Id.

Claimant contends the ALJ erred in failing to find he met or equaled a listing - specifically, Listing 12.02 (Organic Mental Disorders). In order to meet a listing, Claimant must demonstrate he meets or equals all of the specified medical criteria of the particular Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. Andrade v. Sec. of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special

criteria set forth in the listings for evaluating the severity of particular impairments. A finding that an impairment is medically equivalent to a listed impairment must be based solely on medical evidence. Kemp v. Bowen, 816 F.2d 1469, 1473 (10th Cir. 1987).

On October 23, 2012, Claimant was evaluated by Dr. Larry Vaught. Dr. Vaught completed a medical source statement. He found Claimant was markedly limited in the area of interacting appropriately with the public. He also determined Claimant was moderately limited in the functional areas of understanding and remembering complex instructions, carrying out complex instructions, the ability to make judgments on complex work-related decisions, interacting appropriately with supervisors and co-workers, and responding appropriately to usual work situations and to change in a routine work setting. (Tr. 317-18). Dr. Vaught noted Claimant had recently been demoted in his part time job due to a conflict with a customer. (Tr. 318).

Additionally, on March 21, 2011, Dr. Sally Varghese completed a Psychiatric Review Technique on Claimant. She found Claimant suffered from a mood disorder, NOS, PTSD, and intermittent explosive disorder. (Tr. 304, 306, 308). Functionally, Dr. Varghese determined Claimant had moderate limitations in restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining

7

concentration, persistence, or pace, and suffered one or two episodes of decompensation of extended duration. (Tr. 311).

Dr. Varghese also completed a mental RFC assessment on April 21, 2011. She found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 297-98).

The ALJ concluded Claimant had moderate restrictions in activities of daily living as he does household chores, drives, and shops; moderate difficulties in social functioning due to his explosive anger and problems in crowds; moderate difficulties in concentration, persistence or pace because of slow processing speed; and no episodes of decompensation of extended duration. (Tr. 37).

Claimant cites to numerous references in the record which indicates Claimant has anger issues, limited social contact, paranoia, and angry thoughts of hurting people. He then concludes the ALJ "underrated" Claimant. The ALJ based his decision upon findings by medical professionals specifically assessing Claimant's functional limitations as required by the listings. Simple and repeated references in the record is not an indication of severity or functional limitation - only that the diagnoses of the conditions from which he suffers are maintained over time. In this

same vein, this Court does not conclude the ALJ "misjudged" the severity of Claimant's criteria C findings. Claimant's references to Dr. Vaught's moderate findings together with a statement from a co-worker concerning his performance at work equate with severe decompensation to require a highly supportive living arrangement. Claimant received minimal mental health treatment and lived in a private home. (Tr. 320-21). Claimant does not meet or equal Listing 12.02.

### Step Four and Five Evaluation

Claimant first indicates the ALJ did not accommodate the moderate limitation found by Dr. Vaught in responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 318). The ALJ has limited Claimant's contact with co-workers and supervisors and the general public. He has also restricted Claimant to simple tasks. (Tr. 38). The ALJ also cited Dr. Varghese's assessment as supporting his RFC assessment. (Tr. 40). Dr. Varghese found Claimant was not significantly limited in the area of responding appropriately to changes in the work setting. (Tr. 298). The ALJ gave Dr. Vaught's opinion "great weight" but failed to reference this moderate limitation. (Tr. 40). "[A] moderate limitation is not the same as no impairment at all." Haga v. Astrue, 482 F.3d 1205, 1207 (10th Cir. 2007). On remand, the ALJ shall explain this omission or include the limitation in his

RFC assessment.

Claimant also contends the ALJ should have included his moderate limitations found during his step three analysis in his step four and five findings. The ALJ's step three findings do not necessarily translate to a work-related functional limitation for the purpose of arriving at an RFC. Bales v. Colvin, 576 Fed.Appx. 792, 798 (10th Cir. 2014)(unpublished).

Claimant also asserts the ALJ did not proceed through the proper analysis at step four to evaluate his past relevant work. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has determined that the ALJ's RFC determination should be re-evaluated in light of Dr. Vaught's limitation.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ accurately reflected his RFC findings in his hypothetical question to the vocational expert. (Tr. 91-92). The vocational expert testified that Claimant previously performed jobs as a laborer, pipe layer, security guard, stock clerk, tire changer, garbage

collector, dishwasher, and shop helper. (Tr. 88-90). Laborer was classified as unskilled with an SVP of 2 and medium exertion by the expert. (Tr. 88). Shop helper was an unskilled job with an SVP of 2 and heavy exertion. (Tr. 90). Tr. 37). The ALJ fulfilled his obligation at this phase by adopting the expert's analysis. (Tr. 40-41).

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The expert concluded Claimant could perform his past relevant work as a shop helper and laborer under the stated RFC. (Tr. 92). The ALJ found that the requirements of Claimant's past relevant work mirrored his RFC assessment that Claimant could perform work at all exertional levels with restrictions. The ALJ fulfilled his required analysis in the third phase. On remand, the ALJ shall reconsider his RFC assessment and apply any changes to his step four findings.

**Evaluation of Medical and Non-Medical Source Evidence**

Claimant contends the ALJ failed to assign a weight to Dr. Vaught's opinion. The ALJ gave "great weight" to Dr. Vaught's report and medical source statement. (Tr. 40). He adopted Dr. Vaught's limitations into the RFC. (Tr. 38). Claimant does not appear to disagree with Dr. Vaught's opinion. No error is

11

attributed to this assertion.

Claimant makes the same argument with Dr. Varghese's opinion. Again, the ALJ adopted Dr. Varghese's limitations in his RFC and stated the physician's stated findings supported his RFC assessment. (Tr. 40). Claimant does not dispute this contention. Claimant also contends Dr. Varghese's finding of one or two episodes of decompensation was not incorporated into the decision. This finding was only relevant to the step three determination and not to any RFC assessment. Since this case is to be remanded on other grounds, the ALJ should expressly state the weight he is giving to Dr. Varghese's opinion and the basis for doing so.

Claimant asserts the ALJ failed to note the opinions of Claimant's neighbor, friend, and supervisor, Ronald Wyatt. The ALJ is obligated to consider this lay person information to assess the severity of Claimant's impairments. Blea v. Barnhart, 466 F.3d 903, 914 (10th Cir. 2006). On remand, the ALJ shall consider this statement and any other relevant lay witness statements.

### Credibility Determination

The ALJ made the often rejected statement that Claimant's statements were not credible to the extent they are inconsistent with the already determined RFC. (Tr. 39). This Court has found this statement to represent a faulty analysis of credibility whereby a claimant's testimony is not considered in arriving at the

12

RFC. Essentially, this meaningless statement is the extent of the ALJ's credibility justification.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's

credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). On remand, the ALJ shall specifically consider Claimant's statements and affirmatively link his findings to the record.

### Duty to Develop the Record

Claimant also contends the ALJ was implored to acquire records from CREOKS Mental Health Services but failed to do so. On remand, the ALJ shall obtain all available treatment records to consider in this determination, including those from CREOKS.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 29th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE